UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> *Defendant*. | Civil Action No. 19 - 2267 (LLA) |

## MEMORANDUM OPINION

In July 2019, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a FOIA complaint seeking three general categories of documents relating to campaign finance investigations of various individuals associated with Donald Trump's presidential campaign. ECF No. 1. In August 2024, this court partially granted the Department of Justice's ("DOJ") motion for summary judgment as to the latter two categories. ECF No. 45. The court denied the motion without prejudice as to the first category because DOJ's declarations regarding relevant FOIA exemptions were too vague, but it permitted DOJ to supplement its original declarations *ex parte* and under seal. *Id.* at 16. DOJ subsequently renewed its motion for summary judgment with an *ex parte* supplemental declaration. In light of the new submission, the court will grant DOJ's renewed motion.

### I.   FACTUAL BACKGROUND

#### A.   DOJ's Investigation

The underlying facts remain unchanged, but the court recounts them here and adds additional detail about the remaining documents at issue. During the course of Special Counsel

Robert S. Mueller's investigation into Russian interference in the 2016 presidential election, officials discovered evidence suggesting that Michael Cohen, President Trump's former attorney, had engaged in potential wire fraud and violations of the Federal Election Campaign Act, 52 U.S.C. § 30101 *et seq*.  Special Counsel Robert S. Mueller, III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election* ("*Special Counsel Report*"), Vol. I App'x D, at D-4 (Mar. 2019).[1]  Special Counsel Mueller referred this evidence to the U.S. Attorney's Office for the Southern District of New York ("SDNY") and the Federal Bureau of Investigation's ("FBI") New York Field Office, both of which opened an investigation in February 2018.  *Id.*; ECF No. 27-5, at 6-8.  SDNY prosecutors eventually charged Mr. Cohen with one count of causing an unlawful corporate contribution, one count of making an excessive campaign contribution, five counts of tax evasion, and one count of making false statements to a bank.  ECF No. 25-2 ¶¶ 6-7.

In August 2018, Mr. Cohen pleaded guilty to several felony counts and admitted that he had coordinated a series of illegal contributions to President Trump's campaign.  *See generally* ECF No. 27-6; ECF No. 27-7.  Specifically, he admitted to making hush-money payments to two women who claimed to have had extra-marital affairs with President Trump in order to prevent their stories from coming to light until after the election.  ECF No. 27-7, at 11-14.  The scheme was conducted in coordination with other individuals, including executives at American Media, Inc. ("AMI"), a corporation with which DOJ entered into a non-prosecution agreement.  *Id.*;[2] ECF No. 27-12, at 6.  Several senior campaign officials, including President Trump, were implicated in the scheme.  ECF No. 27-6, at 12 (asserting that Mr. Cohen "and one or more members of the

---

[1] *Available at* https://perma.cc/GZQ4-JFPJ.

[2] ECF No. 27-7—the Government's Sentencing Memorandum in *United States v. Cohen*, No. 18-CR-602—refers to "Corporation-1."  This entity is AMI.  ECF No. 27-1, at 3; *see* ECF No. 27-7 (describing the actions taken by Corporation-1); ECF No. 27-12, at 5-6 (same, but naming AMI).

[Trump] campaign[] offered to help deal with negative stories"); ECF No. 27-7, at 11 (explaining that Mr. Cohen "coordinated his actions with one or more members of the campaign, including through meetings and phone calls, about the fact, nature, and timing of the payments").

SDNY prosecutors, assisted by the FBI, conducted a related investigation into whether "certain individuals made false statements, gave false testimony or otherwise obstructed justice in connection with the campaign finance investigation." ECF No. 25-2 ¶ 9. Both investigations continued through 2019. *Id.* ¶ 6. No individuals other than Mr. Cohen were charged based on either investigation. *Id.* ¶¶ 7, 9.

### B.   SDNY Correspondence

From November 2018 to March 2019, the SDNY exchanged a series of emails and memoranda with the Office of the Deputy Attorney General ("ODAG") related to sensitive, ongoing investigations by the SDNY. Altogether, these communications consisted of three memoranda and five emails (collectively, "SDNY Correspondence"):

- In November 2018, the SDNY sent an email responding to ODAG's request for "a list of certain current open investigations, along with current investigative steps" by providing "a brief description of [each] investigation, its status, and anticipated investigative steps." ECF No. 25-2 ¶ 36.

- In December 2018, the SDNY drafted a memorandum summarizing the list and "address[ing] the current status" of the pending investigations. *Id.* ¶ 38.

- The SDNY sent an email attaching the December 2018 memorandum. *Id.* ¶ 37.

- In February 2019, to prepare for "a meeting between the [newly confirmed] Attorney General and the Deputy U.S. Attorney," the SDNY drafted a second memorandum that "summarized" sensitive pending investigations. *Id.* ¶ 41.

- The SDNY sent an email attaching the February 2019 memorandum. *Id.* ¶ 30.

- In March 2019, the SDNY drafted a third memorandum "to provide additional information and to respond to certain questions asked by the Attorney General at the February . . . meeting." *Id.* ¶ 41.

- The SDNY sent an email attaching the March 2019 memorandum. *Id.*

3

- The SDNY replied to an email on the same chain that had included the March 2019 memorandum. *Id.* ¶ 30.

### C.   CREW's FOIA Requests

In July 2019, CREW submitted several FOIA requests seeking records "related to the now closed investigation conducted by [the SDNY] into (1) who, besides Michael Cohen, was involved in and may be criminally liable for the two campaign finance violations to which Mr. Cohen pled guilty; and (2) whether certain individuals made false statements, gave false testimony, or otherwise obstructed justice in connection with [the] investigation." ECF No. 25-5, at 4. CREW specifically sought "witness statements, investigative reports, prosecution memoranda, and FBI 302s,"[3] and it requested expedition because of the "exceptional media interest" at issue and the potential for the records to raise "questions about the government's integrity that affect public confidence." *Id.* at 4, 6.

## II.   PROCEDURAL HISTORY

At the end of July 2019, CREW filed suit challenging DOJ's refusal to expedite the FOIA requests. ECF No. 1 ¶¶ 1, 29-33. The following month, CREW amended its complaint and added a claim for wrongful withholding of non-exempt records. ECF No. 6 ¶¶ 44-48. The parties subsequently conferred and managed to resolve many of their disputes, but three documents remained at issue: (1) the SDNY Correspondence;[4] (2) materials related to search warrants; and

---

[3] FBI 302s are formal witness interview records memorialized on a standard form. *See, e.g.*, *United States v. Moore*, 651 F.3d 30, 99 n.24 (D.C. Cir. 2011).

[4] DOJ withheld all three memoranda in full pursuant to FOIA Exemption 5 based on the work-product and deliberative-process privileges, and in part pursuant to Exemptions 6 and 7(C) to protect personal privacy. ECF No. 25, at 34-38; ECF No. 25-4, at 4. DOJ also withheld portions of the five emails pursuant to Exemption 5 (based on the work-product and deliberative-process privileges) and portions of the November and December email exchanges pursuant to Exemptions 6 and 7(C) to protect personal privacy. ECF No. 25-4, at 4.

(3) documents related to interview records, including documents created as a result of the interviews and the underlying materials shared with interviewees as part of the process. *See generally* ECF Nos. 30, 32, 44.

In the latter half of 2021, the parties filed cross-motions for summary judgment on the remaining documents. ECF Nos. 25, 27. The court (Sullivan, J.) stayed the case while the parties attempted to reach an agreement, Aug. 2, 2023 Minute Order, and the case was subsequently reassigned to the undersigned, *see* Dec. 14, 2023 Dkt. Entry. In February 2024, the parties agreed to exclude a large group of documents pertaining to interview records from the case. ECF No. 44, at 3. Nevertheless, the legal issues raised in their 2021 cross-motions remained ripe for decision. *Id.* at 3-4. The court lifted the stay shortly thereafter. Feb. 26, 2024 Minute Order.

In August 2024, the court issued a memorandum opinion and order partially granting DOJ's motion for summary judgment and denying CREW's cross-motion for summary judgment. ECF No. 45. The court granted DOJ's motion with respect to the search warrant and interview records, concluding that the search warrant records were covered by FOIA Exemptions 6 and 7(C) and that the interview records were covered by FOIA Exemption 5. *See id.* at 16-22. On the SDNY Correspondence, however, the court determined that "DOJ's declarations . . . [we]re too conclusory and vague to support applications of Exemptions 5, 6, or 7(C)." *Id.* at 7. But, rather than "ordering disclosure or *in camera* review of the correspondence, the court [elected to] permit DOJ to supplement its declarations ex parte and under seal." *Id.*

In November 2024, DOJ submitted an *ex parte* declaration under seal and renewed its motion for summary judgment with respect to the SDNY Correspondence. ECF Nos. 49, 49-1.

5

### III.   LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  Congress nonetheless included nine exemptions to disclosure that "are intended 'to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information.'" *Tipograph v. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014).  The agency invoking a FOIA exemption bears the burden of demonstrating that it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  This burden is met when agency affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  The agency may also carry its burden "by providing the requester with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each

withheld document, and explain the exemption's relevance." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002).

Even where the requested information falls comfortably within a FOIA exemption, the agency must still demonstrate that disclosure would result in foreseeable harm.  5 U.S.C. § 552(a)(8).  To satisfy this burden, the agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld."  *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (alteration in original) (quoting H.R. Rep. No. 391, 114th Cong., 2d Sess. 1, 9 (2016)).  The agency must come up with more than "'generalized assertions'" or "'speculative or abstract fears'" of harm.  *Id.* (first quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020), then quoting S. Rep. No. 114-4, 114th Cong., 1st Sess., 1, 8 (2015)).  Instead, it "must provide 'a focused and concrete demonstration of why disclosure of the particular type of material . . . will, in the specific context of the agency action at issue, actually impede' the interests protected by a FOIA exemption."  *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting *Reps. Comm. for Freedom of the Press*, 3 F.4th at 370).

## IV.  DISCUSSION

In its supplemental memorandum, DOJ raises three arguments to withhold the SDNY Correspondence: the work-product privilege, the deliberative-process privilege, and the protection of personal privacy.  With the benefit of DOJ's *ex parte* declaration, the court concludes that the

SDNY Correspondence is shielded by the work-product privilege under Exemption 5 and that it need not address DOJ's other two arguments.[5]

### A.  Additional Facts from DOJ's *Ex Parte* Declaration

In its *ex parte* declaration, DOJ provided additional context for the SDNY Correspondence, which the court addresses here.

*November 2018 email*.  This email discussed five separate investigations by the SDNY, only two of which were responsive to CREW's FOIA requests, and only the first of which remains at issue.  ECF No. 49-1 ¶¶ 9-13.  The portions of the email describing the at-issue investigation noted that Mr. Cohen was awaiting sentencing but that the SDNY was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 10.  DOJ redacted the descriptive paragraph about the investigation status but did not redact the subtitle: "Cohen Campaign Finance Investigation."  *Id.*  While the rest of the email discussed investigations that are not at issue here, they provided detail on investigations into ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶¶ 11-12.  For example, the SDNY stated that it was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 12 (first alteration in original).

---

[5] Both the work-product and deliberative-process privileges are pathways to withholding under Exemption 5, so the court need only address the former.  *See Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 371-72 (D.C. Cir. 2005) ("*Judicial Watch I*") (explaining that the work-product privilege generally sweeps more broadly than the deliberative-process privilege).  Furthermore, as DOJ explains, the information for which it asserted Exemptions 6 and 7(C) is also exempt under Exemption 5.  ECF No. 49, at 13 n.5.  Therefore, the court's decision to grant DOJ's renewed motion for summary judgment on the basis of Exemption 5 eliminates the need to discuss Exemptions 6 and 7(C).

8

*December 2018 email and memorandum.* After ODAG asked for more information on the investigations from the November 2018 email, the SDNY prepared and sent the December 2018 memorandum in anticipation of a meeting with senior DOJ leadership. *Id.* ¶ 14. The email specifically named the investigatory matters at issue and was explicitly sent "[f]or [an upcoming] SDNY briefing." *Id.* ¶¶ 14-15. When releasing parts of the email, DOJ redacted references to the investigation's subject matter. *Id.* ¶ 14.

The memorandum was labeled as "confidential" and "privileged – attorney work product/deliberative process" in bold, italicized typeface. *Id.* ¶ 17. It provided additional detail on the investigations from the November 2018 email. *Id.* ¶ 18. Specifically, it stated that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* (first alteration in original). It also alluded to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* Finally, it informed ODAG that the SDNY ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* (alteration in original). That said, the SDNY ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ¶ 20 (second alteration in original).

*February 2019 email and memorandum.* Following Attorney General William Barr's confirmation on February 14, 2019, DOJ leadership requested—and the SDNY sent—another update on pending investigations from the SDNY ahead of a February 25 meeting between the SDNY and high-ranking DOJ staff. *Id.* ¶ 22. In the email chain, DOJ redacted the name of a subject of investigation. *Id.* ¶ 30.

9

The memorandum was labeled as "confidential" and "privileged – attorney work product/deliberative process" in bold, italicized typeface. *Id.* ¶ 24. Addressing a related investigation to Mr. Cohen's prosecution, the SDNY wrote that it ███████████████ ███████████████████████████ *Id.* ¶ 25. It also outlined ongoing and future investigative steps, such as ████████████████████████████████████ ██████████████████████ *Id.* The SDNY further explained that it was ████████ █████████████████████████████████████████████████████████ ██████████████████████ *Id.*

The SDNY went on to say that it was also ████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 26.

*March 2019 emails and memorandum.* Following the February 25 meeting with Attorney General Barr, DOJ advised the SDNY ██████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████ *Id.* ¶ 29. The SDNY understood that it ████████████████ ██████████████████████ *Id.* In response, the SDNY immediately prepared a third memorandum ██████████████████████████ *Id.* ¶ 31. Specifically, the SDNY claimed █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 32. ████████████████████████ █████████████████████████████████████████████████████████ *Id.* ¶ 34.

When sending the memorandum via email, the SDNY referred to the subject matter of the pending investigations multiple times. *Id.* ¶ 38. DOJ redacted these portions of the emails. *Id.* DOJ also redacted references to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 39.

### B. Work-Product Privilege

FOIA Exemption 5 permits the government to withhold "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To fall within the exemption, a document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

The work-product privilege protects "materials 'prepared in anticipation of litigation or for trial by or for another party or its representative.'" *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 137 (D.D.C. 2013) ("*Judicial Watch II*") (quoting Fed. R. Civ. P. 26(b)(3)(A)). The privilege protects the adversarial process, ensuring that an attorney's thoughts and mental impressions cannot be used against him or her. *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just.*, 844 F.3d 246, 251 (D.C. Cir. 2016). To assess its applicability, the court must make a "case-specific determination that a particular document in fact was prepared in anticipation of litigation." *Id.* The D.C. Circuit has created a two-part test for the privilege: first, the author of the document must have believed litigation was a real possibility at the time the document was created—the "temporal" element; second, the document must have been created "because of" the prospect of litigation—the "motivational" element. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 391 F. Supp. 3d 43, 50-51 (D.D.C. 2019) ("*Judicial Watch III*"); *see Equal Emp.*

11

*Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999). The government must satisfy both prongs. *Judicial Watch III*, 391 F. Supp. 3d at 50-51. The privilege must be narrowly construed, and it "does not extend to a 'government attorney's advice on political, strategic, or policy issues, valuable as it may [be].'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 135 (D.D.C. 2021) (alteration in original) (internal quotation marks omitted) (quoting *Judicial Watch II*, 926 F. Supp. 2d at 144-45). "The government cannot satisfy [its] burden with affidavits that are vague or conclusory, or merely parrot the statutory standard." *Env't Integrity Project v. Small Bus. Admin.*, 151 F. Supp. 3d 49, 53 (D.D.C. 2015).

In its previous opinion, the court explained that DOJ's assertions were too conclusory to warrant application of the work-product privilege. ECF No. 45, at 11. DOJ's original declarations merely stated that the SDNY Correspondence was "prepared in anticipation of the potential prosecution of one or more individuals," with little additional elaboration. ECF No. 25-2 ¶¶ 39, 42. As the court explained, "[t]he lack of detail [was] problematic because it [was] not obvious whether the author of the documents believed that litigation was a real possibility or whether the documents were created 'because of' the prospect of litigation." ECF No. 45, at 11 (quoting *Judicial Watch III*, 391 F. Supp. 3d at 50-51). With the benefit of additional information, the court now concludes that the SDNY Correspondence constitutes protected work product and may therefore be withheld from disclosure.

Starting with the November 2018 email, the court previously understood its contents to merely summarize ongoing investigations and allude to possible other prosecutions. But DOJ's *ex parte* declaration clarifies that the SDNY laid out specific investigative steps relating to some of the mentioned investigations. For example, the SDNY discussed the results of a ▮

12

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████ ECF No. 49-1 ¶ 12. ██████████████████████████████

████████████████████████████████████████████████ *Id.* (first alteration in original).  Even though these parts of the email did not directly address the investigation into Mr. Cohen—the only one that remained at issue for CREW's FOIA requests—"[a]ny part of [a document] prepared in anticipation of litigation . . . is protected by the work product doctrine and falls under exemption 5." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("*Judicial Watch I*") (quoting *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 620 (D.C. Cir. 1997)).  "If a document is fully protected as work product, then segregability is not required." *Id.*

Based on these representations, it is clear that the author of the November 2018 email believed "that litigation was a real possibility" when writing it. *Judicial Watch III*, 391 F. Supp. 3d at 50 (quoting *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 135 (D.D.C. 2019)).  Specifically, the SDNY explained ████████████████ ████████████████████████████████████████████████████████████████ The email was also written because of litigation; it provided a roadmap for the SDNY's continued investigation ████████████████████████████████

The December 2018 memorandum and limited portions of the accompanying email are likewise protected by the privilege.  They were drafted in preparation for a meeting where SDNY officials would brief DOJ leadership about the status of various investigations. ECF No. 49-1 ¶ 14.  For the most part, the memorandum expanded upon the contents of the November 2018 email and provided even more information about the SDNY's activities with respect to the various

13

investigations. *Id.* ¶¶ 16, 18. It also informed ODAG that it planned ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ *Id.* ¶ 18. These action items were sufficiently concrete to indicate that the author anticipated potential litigation and discussed explicit steps the office was taking to prepare for it. Furthermore, the SDNY noted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* DOJ's limited redactions of the cover email were also valid under the work-product privilege because doing so concealed the subject matter of the memorandum and the SDNY's potential investigation targets. *Id.* ¶ 21.[6]

The February 2019 memorandum and portions of the accompanying email are also shielded under the work-product privilege. These communications were written shortly after the confirmation of Attorney General Barr and in preparation for a February 25 meeting with him and senior DOJ leadership. *Id.* ¶ 22. Anticipating that the newly confirmed Attorney General would have questions for the SDNY about its ongoing investigations, the February 2019 memorandum thoroughly explained the legal bases, factual evidence, and central issues in some of the investigations. *Id.* ¶ 25. It also ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* The SDNY further elaborated that it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* Additionally, like with the previous memorandum, the SDNY revealed that it was preparing to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* It also said that it was analyzing ▇▇▇▇▇▇▇▇▇▇▇▇

---

[6] While valid assertions of the work-product privilege protect the entire document and do not require segregation, *see Judicial Watch I*, 432 F.3d at 371, DOJ only asserts the work-product privilege over limited portions of the December 2018, February 2019, and March 2019 emails, *see* ECF No. 49, at 6-10. Presumably, this is because the emails themselves are not work product; they are transmissive and thus only redacted to the extent they *allude to* work product.

███████████████████████████████████████████████ *Id.* ¶ 26. The author thus both anticipated possible litigation and drafted the memorandum because ████████ ████████████████ DOJ's redaction of the investigatory subject matter in the email served to conceal the SDNY's inner deliberations and planning with respect to the investigations.

The March 2019 memorandum and accompanying emails took on a different tone than the previous communications, but they too qualify as work product. The March materials were in direct response to the February 25 meeting between the SDNY and DOJ officials, where the Attorney General ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 31. Attorney General Barr also told the SDNY to ████████████████████████████████████████

████████████ *Id.* ████████████████████████████████

████████████████████████████████████████████████

████████ *Id.* ¶ 32. ████████████████████████████████

████████████████████████████████████████ *Id.* ████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶¶ 34-35. ████

████████████████████████████████████████████████

████████████████ *Id.* ¶ 35. In sum, the memorandum was "classic attorney work product." *Ellis v. U.S. Dep't of Just.*, 110 F. Supp. 3d 99, 109 (D.D.C. 2015); *see SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (holding that documents had litigation "in mind" where they were prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party"). The SDNY considered

15

▮▮▮ In essence, it advocated for a particular course of action with respect to potential and open investigations. *See Ellis*, 110 F. Supp. 3d at 109 (holding that "recommendations about possible courses of action, created in preparation for criminal prosecution," are work product). The SDNY's purpose in creating the memorandum was to ▮▮▮ It therefore satisfies the work-product test.

Overall, DOJ's *ex parte* declaration provides the necessary, additional information needed to invoke the work-product privilege. It identifies concrete investigative steps that the SDNY took or planned to take, ▮▮▮ Some of the correspondence ▮▮▮ Consequently, the court concludes that the SDNY Correspondence (the three memoranda and relevant portions of the five emails) are protected by the work-product privilege and therefore can be withheld pursuant to FOIA Exemption 5.

### C.  Foreseeable Harm to an Interest Protected by FOIA

Under the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016), Congress sought to prevent agencies from "overus[ing]" FOIA exemptions to shield records that can be, but need not be, withheld. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369. The government cannot withhold privileged materials unless it "'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Id.* (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). To satisfy this burden, the agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* (alteration in original) (quoting H.R. Rep. No. 391, at 9).

16

The foreseeable-harm analysis applies to all invocations of FOIA exemptions, *see Leopold*, 94 F.4th at 37, but it specifically targets "agency overuse and abuse of Exemption 5 and the deliberative process privilege," *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369.[7] Therefore, "an agency's burden . . . may be more easily met when invoking other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021). The initial step of establishing a fundamental privilege "will go a long way to show[ing] the risk of foreseeable harm." *Id.* at 124. The agency must still, however, provide "non-generalized explanation[s]" of such harm. *Id.*

DOJ satisfies the test here. The work-product privilege is "essential to an orderly working of our system of legal procedure." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). Lawyers must be permitted to "assemble information, sift what [they] consider[] to be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their] strategy without undue and needless interference." *Id.* at 511. Here, revealing the contents of the SDNY Correspondence would shed light on the office's assessment of criminal liability, its knowledge of existing evidence, and its methods of prosecuting cases. It would also expose the SDNY's rationales for investigating certain individuals, which were the subject of sensitive discussions and tested by senior DOJ officials. For these and comparable reasons, numerous other judges of this court have reached similar conclusions. *See Machado Amadis v. Dep't of Just.*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019) (holding that the "chilling effect" on attorneys resulting from the disclosure of work-product material was

---

[7] Other judges of this court have observed that "[t]he D.C. Circuit has explicated the foreseeable harm requirement *only* in relation to the deliberative process privilege." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (emphasis added).

sufficient to show foreseeable harm), *aff'd sub. nom.*, 971 F.3d 364 (D.C. Cir. 2020); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, No. 23-CV-262, 2024 WL 3858560, at *9 (D.D.C. Aug. 19, 2024) (finding foreseeable harm in the work-product context because disclosing the records would "obvious[ly] . . . deprive [the government's] attorneys of the 'privacy' necessary" to carry out their duties (quoting *Hickman*, 329 U.S. at 510)).

## V.     CONCLUSION

For the foregoing reasons, the court will grant DOJ's Renewed Motion for Summary Judgment, ECF No. 49.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 21, 2025